Good morning. May it please the Court, my name is Kenneth Troiano. I represent the Appellant LaWayne Horne. I'd like to reserve three minutes for rebuttal or if the Court directs any argument on the issue of whether the matter should be dismissed with or without prejudice, I'd like to address it at that time. The issue on appeal in this case is that the defendant made two motions to dismiss for violation of the 70-day indictment to trial rule under the Speedy Trial Act. Both of those motions were denied. The first motion covered a period from early in the case, March 22, 2002, to September 13, 2002. As we've framed the issue the second motion renewed that first motion, but also brought a second motion for a dismissal on the same grounds for the period following the September 13 motion hearing. I'd like to focus on the latter period of time because I think the issues are more clear there and if the Court would decide in the Appellant's favor there would be no need to resolve the first set of issues in the case. The District Court, I believe, committed an error that's reversible in this case and it's written order by finding excludable time on the basis of three motions the Court felt were pending, which I believe were not pending. And once it's decided that they're not pending, there was approximately 153 days at the end of the Speedy Trial Act. And also between September 14th and October 30th, there was about 25 days. So you've got 25 plus 153 following October 30th until the filing of motions later in the case in April of 2003. Do I understand correctly that the period you're referring to is a 153-day period? The only thing pending was your severance motion and this perfunctory discovery request. Is that right? Yes. There was nothing else from any of the co-defendants pending? Well, the District Court said that besides the co-defendants' perfunctory discovery motions, it ruled that declaring the case complex or finding that the ends of justice needed a continuance, that that motion, which was filed back in March of 2002, was also pending. That's what it found in its written order, although that was never addressed at the time that the motion hearings were held in court. So this motion to have the thing declared complex was still undecided? It was undecided. However, on August 15th, 2002, the District Court stated on the record that it would rule the following day in writing that it had sufficient evidence, both verbally and written, to rule on the Speedy Trial Act and also on declaring the case complex. However, when we came back to court on September 13th, 29 days later, the Court just denied the Speedy Trial Act motion and subsequently declared in its written order that that was correct because these motions were still pending. However, our position is that the 30-day advisement period went into effect, as has been recently discussed in the Sutter case, on August 15th. So once September 13th came, the Court really was up against the 30th day and just chose to deny the defendant's Speedy Trial Act motion and didn't address the other motions. And once that time passed, the matter could not — could no longer be used to toll the Speedy Trial Clause. If you're right, what do you get from this appeal? Well, we get the case remanded to the District Court for dismissal. And presumably — With or without prejudice? Well, we would — we didn't brief that it should be with prejudice. I would ask that it be with prejudice, and I'd be willing to argue that issue now. We didn't brief it for two reasons, one, that the Ninth Circuit's expressed a deference to the District Court to make those determinations, but also because, quite frankly, my brief is 30 pages long, and given the Circuit's preference, I chose not to address that. But I think — Well, other than the patient, the problem, I mean, is it your contention that it's the District Court's decision whether to dismiss it with or without? Well, I think this Court, certainly in looking at the Clymer case, which recited on other grounds, certainly such lengthy delays are subject to dismissal with prejudice right from the Ninth Circuit if it agrees the Speedy Trial Act was violated. And in this case, I think the District Court would be sort of in a protective position of its prior rulings, and it would be difficult for it to find the prejudice when it didn't find that the Speedy Trial Act had been violated when we made a motion in September and then, you know, six months later, once again in April of 2003. Oh, I suppose the District Judge is a big enough person that could decide with or without prejudice, honestly. Well, I would hope so, but I note from cases — there are some cases that address this issue, and occasionally they do get remanded, say, to a different District Court judge, and it's never really clear exactly why that's so. And also sometimes it's decided from here that it should be with prejudice. And I think in this case, Mr. Horne was prejudiced because his approach was to get out of the case with all these other alleged gang members. The evidence against him, at least on paper, was minimal compared with many of those. The only physical evidence he was found in possession of was less than a gram of cocaine. He wanted to have his trial as soon as possible and away from the spillover effect of the other defendants in the case. And once that period of time passed where all these defendants pled guilty in plea agreements where they were required to debrief with the government and became potential cooperating witnesses, and the government had time to — over a series of transcripts of phone calls and things like that, his chance to raise a reasonable doubt became more fleeting. And once we're here going on two years later, certainly any advantage he might get from getting to trial quickly is permanently gone. It became more fleeting because he, poor soul, didn't get to be tried with the other people, or because they pled out before he did, and now they could testify against him. Is that what made it? Well, that certainly made the case worse for him, because we don't know what they say or what they did. There was a companion case where a couple of co-defendants were tried, and one of Mr. Horne's co-defendants did testify against the people in that other case. So maybe he would have gotten off even though he really was guilty if only they had severed it, correct? Well, I think his best chance for acquittal was to have a trial in something close to the 70-day period of time, and I think he had a good chance given the fact that there's very little physical evidence, and it would have been a jury trial, and jurors like physical evidence. Severance, of course, isn't a question of his best chance to win, as I recall. The question is whether it's inappropriate to have him join with the others for trial. Isn't that right? Well, it certainly was in the district court's discretion, and that's why we felt that the district court should have made a decision right away. Certainly, it wasn't awaiting  a jury trial. Well, you couldn't really make a decision right away in this case. I mean, there would have to be some – I mean, it sounds like there was a huge amount of just the discovery in terms of pages, and how many defendants did they start out with? Well, 12. Twelve, and thousands and thousands of pages of discovery. So obviously, I wouldn't think that as counsel, you would expect a judge to make a decision on severance without having some handle on the evidence. Well, the district court didn't invite any evidence to be submitted to it. All that evidence doesn't apply to each defendant. There's 12 defendants. The government's the one that chose to join them in the way it did. We didn't necessarily even agree that it was a single conspiracy or that the defendant was anything more than a buyer and a seller. And certainly, we were prepared, if given the opportunity, to argue those issues. The district court felt as it did on August 15, 2002, it had a – Okay, but what's the standard for severance? That's in the district court's discretion to do so. But what factors does the district court look at? Well, certainly, this district court at one point did mention the fact that if, you know, it had all these defendants going to trial, it wasn't going to try them all at once. And the complexity of trying a case with different defendants where there's evidence that's completely separate from one another is an issue that the district court could have considered. I think there's a lot of things I could have said to try to persuade the court to give a severance. The district court said on August 15, 2002, it had all the evidence it needed, all the information it needed verbally and written on the matter and didn't invite any further argument or any – submitting any written materials on the issue. Thank you very much. Thank you. Good morning. Good morning. Linda Frakes, assistant U.S. attorney from the Southern District of California. To answer Your Honor's question, first off, with the issue of severance, under the Zaffaro case, V.A.F.I.R.O. v. U.S., which is at 506 U.S. 534 and 1993 case, there are individuals indicted together, especially in conspiracy cases. It should be tried together. The defendant must demonstrate substantial prejudice for having a joint trial. And some of the grounds or the three grounds that can be raised that were not raised in this case for severance was the need for the testimony of a co-defendant. That was never raised by the defendant. And it would have to be exculpatory testimony from a co-defendant. The defendant would also have to show antagonistic defenses that were irreconcilable, that they were mutually exclusive. That was never shown or pled by the appellant in this case. Or if there was a brutal issue that could not be resolved with appropriate redaction. That was not brought up by the appellant in this case. Just to get a better handle or a better chance to get out of the gate first is not a basis for severance. And I believe that was the basis raised by the appellant in the district court level. The issue here really is whether there were pending unresolved motions was told the Speedy Trial Act. And the government submits their guess. There were pending unresolved motions that told the time from the date of March 21st when the last defendant was arraigned and the date the first motions were filed until a hearing on all motions were decided on April 17th, 2003. In this case, we have a wonderful record from the district court. He made written findings. And those findings have to be continued by the Ninth Circuit here unless you find clear error. And in this case, the court found multiple instances when motions were pending. He listed the dates when motions were being filed in this case and when hearings were being held. It wasn't like a motion was filed on day one and it went 12 months before a hearing was held. Hearings were held on specific contested issues throughout the pendency of this case. I made a note to myself that from October 30th of 2002 until April 2nd of 2003, there was nothing pending except the perfunctory discovery request and his motion to sever. There were motions that were filed after the October 30th hearing were not filed again, Your Honor, you're correct, until April 2nd, 2003. And that leaves 150 some odd days, 153, 154 days unaccounted for. Your Honor, if all the motions had been resolved on August, I'm sorry, on October 30th, 2003, I would agree. But that's not the case. Well, what other motions were pending then? That's what I'm connected to. The motions for discovery. Which are to just send me whatever I'm entitled to? No, there were additional contested issues. We had a lengthy hearing, if you were to look back at the transcript from June 6th even, about what discovery had to be turned over and what discovery was not going to be turned over and what discovery was going to be turned over only in a limited circumstance. I can speak directly to the line sheets of the wiretap calls. The issues that were resolved were resolving around the discovery disputes were actual disputes. There were still issues with respect to the admission or the allowance of the government to produce or present expert testimony, whether or not the defendants would be chained, whether or not the government would have to turn over Jenks material earlier than what the government would agree to do. The issue as to the Hempthorne request for the agents that would be testified, was it presentable and allowable for the government to just rely on the agency to do the Hempthorne analysis, send us the results, and then go forward from there? Or was the government prosecutor responsible for the case going to have to sit down and look through every agent's personnel file? Was the government responsible for looking through personnel files of non-Federal agents? Those issues still had not yet been resolved and were still pending, and those were not insignificant, perfunctory, boilerplate motions, as I would call it. And you can look to this, Your Honor. There were still, as there being still live discovery actual disputes, because there were additional discovery motions still being filed after October 30th, and those were specific issues. When was it filed? The appellant filed his on April the 3rd. There was a 2003. Okay. What I'm talking about is the period between October 30 of 02 and April 2nd of 03. What was going on between those in that six-month period of time? No further motions were filed on that time, and I don't believe further motions have to be filed for Your Honors to find that there were pending motions. And if you recall, the district court judge found as a fact that motions were pending and that these were not perfunctory motions that were just pending on the docket during this time. The discovery, as Your Honor pointed out, was, and the court found, was ongoing. Additional discovery was being provided. Some discovery was not being provided, specifically transcripts. There was a specific request by the appellant for a certain telephone call that he demanded to have, and if the government would not turn it over, then it should be excluded as a violation of Rule 16. And when was that put in issue? That specific discovery item was put in issue on April 3rd by 2003. Right. That's after the period that I'm talking about. Correct. Are you saying that's evidence that not all the discovery issues had been resolved? Yes, that's what I'm trying to point out. You're saying that that's, well, I mean, I'm not saying that you're bootstrapping, but you're saying that if that's why you can't say that the discovery issues were perfunctory because they had not all been resolved. If they had, they wouldn't still be filing motions. I couldn't say it better, Your Honor. Thank you. That's exactly right. And it's not unreasonable or surprising in a case with over 8,500 pages of discovery to review, with over 1,100 cassette tapes to review and identify, to file further additional motions if one was thought necessary. And it was thought necessary when the appellant filed additional motions. He wasn't the only defendant to file additional discovery motions to put, to show that this discovery matters were in dispute. I believe Defendant Number 12 in this case also filed a motion for discovery and for a continuance on April 2nd. Defendant Number 4 also filed a motion saying there's obviously a problem here because there's 1,200 pages that one attorney has that the other attorney has. And we need to make sure that we've gotten all our discovery that we're entitled to. And I just pointed that to show, Your Honors, that it wasn't a case where the hearings were deliberately set off to exclude the speedy trial clock. The only time continuances were ever requested were only by the defense. And at the time to make the objections, counsels, the defense who wanted the objections and appellant acquiesced by not stating the objection, other than saying he wanted to have a speedy trial clock, but, and then that was it. I would say that based on the findings that were, the district court made in this case, the numerous hearings that were being held that the district court and the parties were working towards a quick and swift resolution to a case that involves over a year's worth of criminal activity. It was charged as a conspiracy, although the appellant might be named in one overt act, that does not show the entire criminality of the, of the, what the indictment was. You've convinced me this is a case of unusual complexity. There's a mechanism to invoke when that, when you have a case like that. Was that invoked here? Your Honor, it was not invoked in order to toll a speedy trial act. The government was as interested as anyone else to get this to trial as quickly as possible. The court did find it was complex, and the court made that finding on September 13th, 2002, but he never excluded time. And looking back, maybe he could have said, okay, I find it complex from now until October. I find it excludable under the interest of, ends of justice exception. And then after October, I find until the April date. Okay. Again, I find it because it's complex to exclude the next four or five months. He didn't do it. He still found it was complex. And again, I think that's relevant to show that that's why discovery disputes were not just perfunctory. In the Sutter case, which was a case where they addressed this perfunctory motion that's just kind of told and continuing on, no further hearings are set, no other hearings are being held. The case just resolved. That's not this case. In this case, at every hearing, the court sets the next date for the next hearing. And the court can take as long as he wants to decide an issue. And he can ask for whatever filings he wants. He can take additional evidence if he desires. And tell that he then tell all the evidence is in and he's had his hearing, he can take a reasonable period of time to decide the issue. And the judge had and he decided all issues on April 17th. And that's the next day is when the clock would start running because that's the day he decided all issues. He could have even gotten an extra 30 days if he wanted because he's allowed to do it after the issues are under advisement. And that's not this case. In the Sutter case, it was a one-moment crime on a port of entry with one defendant and a trunk full of marijuana. And that's not this case. In that one, they continued hearings, but they never ruled on the motions. They never set it for a hearing. In this case, in October, the court set the hearing on all the motions to be decided and determined on April 17th. And that's why these motions were pending during that entire time, regardless if it was reasonable or not. Thank you very much. Thank you, Your Honor. Ms. Perrata, you really used up your time, and if you want, we'll give you 30 seconds to. All right. I'll pause the break. The – I don't think our motion to dismiss filed twice is acquiescence to the Speedy Trial Act. The district – I'd note that on June 6th, the government said it was ready to go at the court's convenience. And also, on September 13th, it said that the court had taken motions under advisement back on June 6th. And that's cited in our brief. All the motions, these early discovery motions, were under submission by the June 6th hearing. These motions filed at the end of the case. One was by – Can I ask you a question? I know it's your time here, but the – but you'll have a little extra time to answer it. And counsel for the government basically is saying that there were ongoing issues in the discovery, in terms of that there were things that were being requested that they weren't prepared to turn over, or that there were issues in terms of, you know, were they going to have to look at personnel records? Could they have someone else look at personnel records? Is that true, or – I don't believe it is, because the spoiler plate discovery motions, there were no disputes. Nobody argued anything about discovery after June 6th until those motions that were filed on April 2nd. Our motion – Well, but the fact that motions were filed after indicates you didn't have everything that you wanted. Or I would hope you wouldn't file that motion for something that you didn't want. They were issues that came up at a later date that were very discreet and very unusual. In fact, Mr. Swenson fired his second attorney who was retained. The new lawyer needed time to get on board in the case. Mr. Walls' attorney said that, oops, I missed a bunch of stuff. But the thing is, it's on the record in this case. I can't cite the exact spot. Well, but she said specifically there was like a phone call or something like that that you wanted that they didn't want to give you. Is that true or not true? I asked for what it meant. And the government explained that there wasn't any phone call that they didn't give me, that I just misunderstood the explanation, the meaning of something. I basically, just to cover myself for trial, I asked – Now, when was that? That was something that we filed on April 3rd. And the government clarified without any argument from us in the motion hearing on April 17th. Things come up from time to time. But there was nothing that anybody felt we were being denied. All the discovery was put in a central repository. And this is on the record. The fact that one attorney forgot to check it more carefully than the other doesn't mean that there's a discovery dispute. There were no disputes raised. I'm not sure that most of the defense attorneys really even know what they mean when they file them in their discovery motions. It's just to cover yourself to make sure that later the government comes up with something that you didn't have, that you said, hey, I asked for that way back two years ago. And that's the reason why those motions are made. There was no open dispute, no ongoing dispute as discussed in the Sutter case. Thank you very much. Both counsel, the case just argued is submitted. Good morning.
judges: Fernandez,silverman,callahan